UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JOEL GASTON,

                Petitioner,

vs.                                    Case No. 3:05-cv-1278-J-12HTS

JAMES R. MCDONOUGH, etc.;
et al.,

                Respondents.

_____


**ORDER**

**I. Status**

    Petitioner Joel Gaston is proceeding on a Petition for Writ of

Habeas Corpus (Doc. #1) (hereinafter Petition).[1]  He is represented

by counsel.  The Petition challenges 2001 Duval County convictions

for one count of sexual battery, one count of lewd or lascivious

molestation and one count of lewd and lascivious conduct.  One

ground is raised:  ineffective assistance of counsel:  counsel

misled Petitioner about the possible sentence he could receive.

Petition at 8.

_____

    [1] Petitioner's Memorandum of Law in Support of Petition for a
Writ of Habeas Corpus, Pursuant to 28 U.S.C. §2254 (Doc. #2)
(hereinafter Memorandum) was filed simultaneously with the
Petition.  Attached to the Petition are two Appendices (Appendix I
& Appendix II).

Respondents filed an Amended Answer to Petition for Writ of Habeas Corpus (Doc. #11) on April 19, 2006. The Respondents have provided the Court with an Appendix (Doc. #12), filed April 21, 2006.[2] Petitioner's Reply to Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. #13) was filed on May 4, 2006.

## II. Procedural History

Petitioner was charged by information in Case No. 2000-14489-CFA, with capital sexual battery, lewd or lascivious molestation and sexual battery (two counts). Ex. A at 2-3. In Case No. 2000-14851-CFA, he was charged with two counts of lewd or lascivious conduct.[3] He plead guilty to one count of sexual battery and one count of lewd or lascivious molestation in Case No. 2000-14489-CFA and to one count of lewd or lascivious conduct in Case No. 2000-14851-CFA. The Plea of Guilty and Negotiated Sentence specified the following terms:

> PG to 3 counts  Ct 1-sex battery with a cap of 15 yrs prison; Ct[2]-lewd molestation w/ a 15 yr statutory maximum; Ct. 3 - lewd conduct w/ a 5 yr statutory maximum. All counts may run consecutive or concurrent, allowing def's exposure of 35 years. Regardless of imposed incarceration time, parties agree to an 8 year prob. period w/ standard sex conditions w/ all

---

[2] The Court hereinafter refers to Respondents' Exhibits (Doc. #12), filed April 21, 2006, as "Ex."

[3] Although the Respondents reference this information as being within Exhibit A, the information and judgment and sentence in Case No. 2000-14851-CFA have not been provided to the Court. The details of the information, however, are provided in the Initial Brief of Appellant, Case No. 1D02-393 at 2, Ex. B.

- 2 -

> conditions imposed by court. A sentencing
> hearing will be held with testimony & evidence
> introduced. The applicable guidelines are
> 223.05 mths (18.5) years and a max of 35
> years. Def will be classified as a sexual
> predator & would have to register as same.

Ex. A at 11. As part of the negotiation, the state agreed to *nolle prosequi* two additional counts of sexual battery in Case No. 2000-14489-CFA, and to *nolle prosequi* one count of lewd or lascivious conduct in Case No. 2000-14851-CFA. Id.

Petitioner was sentenced to terms of ten, ten, and five years, to be served consecutively. Ex. D-6 at 253-57. Each sentence was to be followed by a period of eight years sex offender probation; however, after a motion to correct sentencing error, there was apparently a change to this probation requirement. The motion to correct sentencing error and the order addressing same have not been provided to the Court.[4]

---

[4] The circuit court states that the court deleted the probation requirement from each sentence. Ex. D-4 at 292 n.3. The Florida Department of Corrections website shows a probationary term of eight years in Case No. 2000-14489-CFA. http://www.dc.state.fl.us/ActiveInmates/detail. See the Uniform Commitment to Custody, stating the sentences are to be followed by eight years of sex offender probation. Ex. A at 22. See also Initial Brief of Appellant, Case No. 1D02-393 at 9, Ex. B (explaining that the Motion to Correct Sentencing Error claimed the total sanction of five years in prison followed by eight years of sex offender probation for a third degree felony exceeded the statutory maximum of five years, and that the trial court granted the motion).

Direct appeals were taken, and <u>Anders</u>[5] briefs were filed by counsel.  Ex. B.  The judgments and sentences were affirmed per curiam on August 1, 2002, and November 27, 2002.  <u>Id</u>.  The mandates issued on August 27, 2002, and December 26, 2002.  <u>Id</u>.

On January 17, 2003, Petitioner filed a Rule 3.850 Motion for Post Conviction Relief.  Ex. C.  Two grounds were raised:  (1) "[i]neffective assistance of counsel pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), counsel affirmatively misled and misadvised Defendant about the sentencing cap (possible maximum sentence pursuant to the plea agreement); counsel failed to explain to Defendant that a sentence below the guidelines minimum of 18.5 years would have to be a departure authorized by Section 921.0226, Florida Statutes[;]" and, (2) "[i]neffective assistance of counsel pursuant to <u>Strickland v. Washington</u>, *supra*; counsel failed to advise Defendant that he could be committed pursuant to the Jimmy Ryce Act."  <u>Id</u>. at 18, 34 (underlining omitted in part).

An evidentiary hearing was conducted, Ex. D-5, and on April 29, 2004, an Order Denying Defendant's 3.850 Motion for Post-conviction Relief was filed.  Ex. D-4 at 291-305.  Petitioner moved for rehearing, Ex. D-4 at 306-14, and rehearing was denied.  <u>Id</u>. at 315-16.  An appeal was taken.  <u>Id</u>. at 317.  Briefs were filed, Ex. E, and the First District Court of Appeal affirmed per curiam in an

---

[5] <u>Anders v. California</u>, 386 U.S. 738 (1967).

opinion filed April 13, 2005. Id. Petitioner moved for rehearing, and rehearing was denied. Id. The mandate issued on June 16, 2005. Id.

### III. Evidentiary Hearing

A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)). Here, the pertinent facts of the case are fully developed in the record before the Court. In fact, an evidentiary hearing was conducted in the state circuit court, and Petitioner was represented by counsel. Ex. D-5.

No evidentiary proceedings are required in this Court. See High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001). The Court can "adequately assess [Petitioner's] claim without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

### IV. Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-

132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claim under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> First, § 2254(e)(1) sets a deferential standard of review for factual determinations made by a state court, stating that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Marquard v. Sec'y for Dep't of Corr., 429 F.3d 1278, 1303 (11th Cir. 2005), cert. denied, — U.S. —, 126 S.Ct. 2356, 165 L.Ed.2d 283 (2006).

> Second, § 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court

> proceeding." 28 U.S.C. § 2254(d); Marquard, 429 F.3d at 1303. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006).

Stewart, 476 F.3d at 1208-09.

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of

<u>Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).   <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005).   Thus, to the extent that Petitioner's claim was adjudicated on the merits in the state courts, it must be evaluated under the new § 2254(d).

## V.  Ineffective Assistance of Counsel

Petitioner has raised a claim of ineffective assistance of counsel.  As noted previously, the standard of review to be applied is that found in AEDPA.  As explained by the Supreme Court of the United States:

> Under 28 U.S.C. § 2254, [Petitioner's] entitlement to federal habeas relief turns on showing that the state court's resolution of his claim of ineffective assistance of counsel under <u>Strickland v. Washington</u>, <u>supra</u>, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1).  An "unreasonable application" occurs when a state court "'identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." <u>Wiggins v. Smith</u>, <u>supra</u>, at 520, 123 S.Ct. 2527 (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of O'CONNOR, J.)). That is, "the state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable." <u>Wiggins v. Smith</u>, <u>supra</u>, at 520-521, 123 S.Ct. 2527 (quoting <u>Williams v. Taylor</u>, <u>supra</u>, at 409, 120 S.Ct. 1495 (internal quotation marks omitted)).

> Ineffective assistance under <u>Strickland</u> is deficient performance by counsel resulting in prejudice, 466 U.S., at 687, 104 S.Ct.

> 2052, with performance being measured against
> an "objective standard of reasonableness,"
> id., at 688, 104 S.Ct. 2052, "under prevailing
> professional norms." Ibid.; Wiggins v. Smith,
> supra, at 521, 123 S.Ct. 2527.

Rompilla v. Beard, 545 U.S. 374, 380 (2005).

The United States Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Wiggins v. Smith, 539 U.S. 510, 521 (2003) (quoting Strickland v. Washington, 466 U.S. at 688).

The Eleventh Circuit has expounded upon the deference due to counsel's performance as well as to the state court's decision concerning that performance:

> In assessing [Petitioner's] claim that
> his trial counsel were ineffective we must
> keep in mind that "[j]udicial scrutiny of
> counsel's performance must be highly
> deferential." Id. at 689, 104 S.Ct. at 2065.
> In addition to the deference to counsel's
> performance mandated by Strickland, the AEDPA
> adds another layer of deference--this one to a
> state court's decision--when we are
> considering whether to grant federal habeas
> relief from a state court's decision.
> Woodford, 537 U.S. at 24, 123 S.Ct. at 360
> (section 2254(d)(1) imposes a "highly
> deferential standard for evaluating
> state-court rulings") (internal marks and
> citation omitted). [Petitioner] must do more
> than satisfy the Strickland standard. He must
> also show that in rejecting his ineffective
> assistance of counsel claim the state court
> "applied Strickland to the facts of his case
> in an objectively unreasonable manner." Bell

<u>v. Cone</u>, 535 U.S. 685, 699, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).

<u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004), <u>cert. denied</u>, 544 U.S. 982 (2005).

In order to succeed on an ineffective assistance of trial counsel claim concerning a guilty plea, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness; and, (2) a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on going to trial. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-59 (1985) (extending the test adopted in <u>Strickland</u> to cases involving guilty pleas).

Ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. <u>See</u> <u>id</u>. at 56 (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

> "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)); <u>see</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370-71, 88 L.Ed.2d 203 (1985)

> (holding that, in the plea context, a habeas
> petitioner establishes ineffective assistance
> of counsel by demonstrating that counsel's
> advice and performance fell below an objective
> standard of reasonableness, based upon which
> he pled guilty).   For a guilty plea to
> "represent an informed choice" so that it is
> constitutionally "knowing and voluntary," the
> "[c]ounsel must be familiar with the facts and
> the law in order to advise the defendant of
> the options available." Scott v. Wainwright,
> 698 F.2d 427, 429 (11th Cir. 1983).   "The
> failure of an attorney to inform his client of
> the relevant law clearly satisfies the first
> prong of the Strickland analysis . . . as such
> an omission cannot be said to fall within 'the
> wide   range   of   professionally   competent
> assistance' demanded by the Sixth Amendment."
> Hill, 474 U.S. at 62, 106 S.Ct. at 372 (White,
> J.,   concurring)   (quoting   Strickland   v.
> Washington, 466 U.S. 668, 690, 104 S.Ct. 2052,
> 2066, 80 L.Ed.2d 674 (1984)).

Finch v. Vaughn, 67 F.3d 909, 916 (11th Cir. 1995).

A federal habeas court reviews a state court guilty plea only

for compliance with constitutional protections.

> This court has concluded that "[a] reviewing
> federal court may set aside a state court
> guilty plea only for failure to satisfy due
> process:   If a defendant understands the
> charges   against   him,   understands   the
> consequences of a guilty plea, and voluntarily
> chooses to plead guilty, without being coerced
> to do so, the guilty plea . . . will be upheld
> on federal review." Stano v. Dugger, 921 F.2d
> 1125, 1141 (11th Cir.) (en banc), cert.
> denied, ___ U.S. ___, 112 S.Ct. 116, 116 L.Ed.
> 2d 85 (1991).

Jones v. White, 992 F.2d 1548, 1556-57 (11th Cir.), cert. denied,

510 U.S. 967 (1993).

Thus, in order for a guilty plea to be constitutionally valid, it must be made knowingly, intelligently, and voluntarily. <u>Pardue v. Burton</u>, 26 F.3d 1093, 1096 (11th Cir. 1994).

> A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial. <u>Brady v. United States</u>, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." <u>Id</u>.; <u>United States v. Fairchild</u>, 803 F.2d 1121, 1123 (11th Cir. 1986) (per curiam).

> Reviewing federal courts "may set aside a state court guilty plea only for failure to satisfy due process." <u>Stano v. Dugger</u>, 921 F.2d 1125, 1141 (11th Cir.) (en banc), <u>cert. denied</u>, 502 U.S. 835, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991). "[W]hen it develops that the defendant was not fairly apprised of its consequences" or when "the defendant pleads guilty on a false premise" in the prosecution's plea agreement, a guilty plea violates the Due Process Clause. <u>Mabry v. Johnson</u>, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). The Court has instructed that the "essence" of any promises that induce a guilty plea "must in some way be made known" to the defendant. <u>Santobello v. New York</u>, 404 U.S. 257, 261-62, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

> For a guilty plea to be entered knowingly and intelligently, "'the defendant must have not only the mental competence to understand and appreciate the nature and <u>consequences</u> of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the <u>legal options and alternative that are available</u>.'" <u>Stano</u>, 921 F.2d at 1142 (citation omitted) (emphasis added). Voluntariness implicates "[i]gnorance,

- 12 -

incomprehension," and "inducements" as well as "coercion, terror" and "threats."  <u>Boykin v. Alabama</u>, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); <u>Stano</u>, 921 F.2d at 1141.  Thus, "[i]gnorance of the consequences of a guilty plea may require its rejection." <u>Stano</u>, 921 F.2d at 1141 (citing <u>Boykin</u>, 395 U.S. at 243-44, 89 S.Ct. at 1712).

<u>Finch</u>, 67 F.3d at 914-15.

## VI.  Ground One

After conducting an evidentiary hearing, the trial court denied the claim of ineffective assistance of counsel on the merits, and thus, there is a qualifying state court decision.  <u>See Wright</u>, 278 F.3d at 1255-56.  Having found that the state court determination was a qualifying decision, the Court must next consider the "contrary to" and "unreasonable application" components of the statute.  "It is the objective reasonableness, not the correctness <u>per se</u>, of the state court decision that we are to decide." <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 537 U.S. 978 (2002).

Since a federal constitutional claim was raised in the state courts, the question now before the Court is whether the decision of the trial court in denying the Rule 3.850 motion and the First District Court of Appeal decision per curiam affirming the ruling of the trial court are entitled to deference under AEDPA.  In essence, this Court must ask whether the adjudications of the state courts resulted in decisions that were contrary to, or involved an unreasonable application of clearly established federal law, as

- 13 -

determined by the United States Supreme Court or resulted in decisions that were based on unreasonable determinations of the facts in light of the evidence presented in the state court proceedings.  Of course, the state courts' factual findings are presumed correct, unless rebutted by Petitioner with clear and convincing evidence.

Petitioner, in his Memorandum, claims that the state court decisions were directly contrary to clearly established federal law and there has been an unreasonable application of federal law by the state courts' decisions.  Memorandum at 3-5.  He explains: "[t]he essence of the claim in this case is counsel advised that there was a one in a million chance that Petitioner would get prison time or a sentence like the one Petitioner actually received - 25 years." Id. at 3.  Petitioner argues:  "[t]he state courts in this cause unreasonably applied Strickland v. Washington, *supra*, and Hill v. Lockhart, *supra*, because the state courts apparently relied upon the fact that because Petitioner knew he could theoretically receive the sentence he got, counsel did not render ineffective assistance." Id. at 4-5.

In denying the ineffectiveness claim, the trial court identified the two-pronged test established in Strickland and stated, in pertinent part:

> In order to prevail on his claim of ineffective assistance of counsel, Defendant must show that: (a) counsel's performance was outside the range of reasonable professional

assistance, and (b) counsel's deficient
performance prejudiced the defense, meaning
that there is a reasonable probability that
the outcome of the proceeding would have been
different absent counsel's deficient
performance. *See Strickland v. Washington*,
466 U.S. 668, 687 (1984); *Cherry v. State*, 659
So.2d 1069, 1072 (Fla. 1995); *Knight v. State*,
394 So.2d 997 (Fla. 1981); and *Reaves v.
State*, 593 So.2d 1150 (Fla. 1st DCA 1992).
The standard which the Defendant's counsel
must meet is that of "reasonably effective
counsel, not perfect or error-free counsel."
*Coleman v. State*, 718 So.2d 827, 829 (Fla. 4th
DCA 1998).

Ex. D-4 at 294-95.

The trial court, in a very detailed and thorough opinion,
denied Petitioner's Rule 3.850 motion.  The court noted that both
Petitioner and his former attorney, John Gary Baker, testified at
the evidentiary hearing.[6]  <u>Id</u>. at 295.  The court made the
following written findings:

(a) At the time of the involved offenses,
the Defendant was fifteen years old.  The
victims of the Defendant's sexual offenses
were three toddlers enrolled in the home day
care operated by the Defendant's parents.  The
Defendant gave oral and written confessions to
detectives investigating the case.  *See*
testimony of Detective Mitchell Chizik, pages
119-146 of transcript of November 30, 2001,
sentencing hearing (State's exhibit 1 for
3.850 motion hearing).  The written
confessions were in the Defendant's own
handwriting.  *Id*.

(b) At the time of the offenses, the
Defendant was an honors student, making A's

_____

[6] Petitioner was ably represented by counsel at the
evidentiary hearing.

and B's in 10th grade in public high school.
On November 16, 2001, when he entered his
plea, the Defendant was 16 years old and
enrolled in public school in the jail. He was
then, and is now, an intelligent individual.
He testified during the plea colloquy that he
could read and write well.  (Transcript of
November 16, 2001, plea colloquy, page 10,
lines 16-18).

At the hearing on the pending motion, the
Defendant read from the plea form in these
cases. He read fluently, and pronounced
difficult words correctly and without
hesitation.

At the time he entered into his
negotiated plea agreement, the Defendant
clearly had the ability to read and understand
the plea form.

(c) Gary Baker, Esquire, became the
Defendant's attorney in July of 2001, four
months before the Defendant entered his guilty
pleas. At that time, Mr. Baker had practiced
(principally criminal) law for 23 years, and
had litigated over 500 jury trials. He had
represented clients entering pleas "straight
up" to the Court in approximately 200 cases.

The Defendant had previously been
represented by Karl Green, Esquire, and,
later, by Mark Green, Esquire (no relation).
During his representation, Mr. [Mark] Green
visited the Defendant in jail once each month
and talked with the Defendant about plea
agreements.   The State at that time had
offered a plea involving a sentencing range of
from 2 years to 15 years.  The Defendant
discussed this offer with Mr. Green and with
his parents, and rejected it.  The Defendant
knew that the decision whether to accept, or
reject a State offer was his decision.
Through his discussions with Mr. Green during
Mr. Green's six or seven jail visits, the
Defendant learned of the State's evidence and
witnesses against him. He discussed with Mr.
Green whether there might be a basis for a

- 16 -

Motion to Suppress his oral and written confessions. At the Defendant's urging, Mr. Green filed a Motion to Suppress.

Notwithstanding the weighty evidence arrayed against him, and notwithstanding the State's intent to prove him guilty of penile-vaginal union/penetration and penile-anal union/penetration on three child victims, the Defendant believed that he should receive a "time served" disposition, with probation. Despite Mr. Green's close attention to the case, the Defendant concluded that Mr. Green didn't "fight" for him," [sic] and fired him. He then hired Mr. Baker.

Throughout the course of his representation of the Defendant, Mr. Baker communicated with the Defendant's parents and, through then [sic] and their weekly visits with the Defendant, kept the Defendant apprised of developments. Attorney Chris Wilson, an attorney with Mr. Baker's office, represented and was physically present with, the Defendant at all pretrial conferences in court. During his representation of the Defendant, Mr. Baker made various counter-offers to the State, after first discussing these counter-offers with the Defendant. Over the course of the case, Mr. Baker maintained contact with the Defendant's family and answered all their questions.

(d) The Defendant's Motion to Suppress was to be heard on November 16, 2001. The State had previously made the Defendant an offer which would have established a sentencing range of from two years to fifteen years. On that morning, the State for the first time acceded to the Defendant's longstanding request that it extend an offer with no two-year floor; however, as a *quid pro quo*, the State also eliminated the fifteen-year ceiling on the sentencing range. The State indicated that its offer would only be open that morning and would be withdrawn if it were necessary to go forward with the hearing on the Motion to Suppress.

- 17 -

The Defendant discussed with Mr. Baker that morning in court whether to accept the State's offer.  The two initially talked alone for 20 to 30 minutes.  Mr. Baker then talked with a family friend of the Defendant.  The Defendant wanted to know what his father thought, so Mr. Baker went into the hall, talked with the father for 15 minutes, and reviewed the plea form with him.  Mr. Baker then conferred again with the Defendant.  He both read each paragraph of the plea form, "word for word," to the Defendant, and explained to him the meaning of each paragraph.

He also provided the Defendant an opportunity to independently read the form. The Defendant contends that he "never looked at" and chose not to read the plea form, relying instead on what his lawyer told him about the offer.  The Court rejects this testimony as unworthy of belief, and notes that the Defendant specifically testified under oath during the plea colloquy that he had read, and had understood, the plea form. *See* transcript of November 16, 2001, plea colloquy, at page 10, lines 19-25, and page 11, lines 1-2.  Further, even were it true that the Defendant had elected not to read the plea form, he would nevertheless have been aware of its contents because his attorney read the form, word for word, to him, and the trial judge carefully reviewed all its express terms, as well as its implications, with him.

Mr. Baker advised the Defendant that, in his opinion, the State's offer wouldn't get any better. He explained that the decision whether to accept the offer was the Defendant's.  He recommended, however, that the Defendant take the State's offer.

In making that recommendation, Mr. Baker gave the Defendant his "best, well-informed opinion" about the likely sentence but made him no promises and no guarantee.  He simply identified "the odds as he saw them," based on his experience.   He explained that the

sentencing judge, who was new to the bench, was well-regarded and in general known to be a "reasonable sentencer:" he cautioned, however, that he had had no prior experience with the judge in cases involving sexual offenses. He expressed to the Defendant and to the Defendant's father his opinion that there was strong evidence of mitigation, and that the odds were "one in a million" that the Defendant would be sentenced to a lengthy term in Florida State Prison. He specifically stated, however, that "if the judge was having a bad day," the total sentence could be up to 35 years.

Although Mr. Baker clearly disagreed with the sentence imposed in this case, he testified that, under similar circumstances, he would still give a client the same advice he gave to the Defendant in this case.

After he reached the decision to accept the State's offer and signed the plea form, the Defendant had an hour to reflect on that decision before the plea colloquy commenced. As noted by Judge Wallace during his plea colloquy, the Defendant, at the time he plead, had been incarcerated for one year, and had heard a number of plea colloquies and seen a number of plea forms. He was familiar with the process.

(e) Before offering his professional advice for the Defendant's consideration, Mr. Baker explained to the Defendant that, under the State's offer, the maximum sentence he faced, if all sentences were to be imposed consecutively, was 35 years in Florida State Prison. Further, the plea form itself reflects that.

(f) The Defendant accepted the State's offer knowing that to do so could subject him to the provisions of the Jimmy Ryce Civil Commitment Act. Judge Wallace explained the Act to him, and Mr. Baker, although he cannot now recall a specific conversation on that issue, knows that he spoke about the matter

- 19 -

because it appears on the plea form, and he read the entire plea form to the Defendant.

(g) The Court's notes reflect argument, but no testimony, regarding any failure by Mr. Baker to explain to the Defendant that a sentence below the guidelines minimum of 18.5 years would have to be a departure authorized by section 921.0226, Fla. Stat., that the Court would be required to give valid reasons for any downward departure, *id.*, and that the State could appeal any downward departure. There is absolutely no evidence that the Court would have been unwilling to engage in the judicial effort necessary to make the findings necessary to impose a below-guidelines sentence, had it felt (which it clearly did not) that a below-guidelines sentence was appropriate. Even assuming, without finding, that Mr. Baker failed to advise the Defendant of these matters, such failure would not fall below an objective standard of reasonableness, and, even if it did, the Defendant has failed to carry his burden of demonstrating that there is a reasonable probability that, but for the failure to give such advice, the Defendant would not have accepted the State's offer and would not have entered into the plea agreement.

(h) At the hearing on the 3.850 motion, the Defendant testified that he had lied to the judge during the plea colloquy on multiple occasions. Although the Court recognizes that there could be occasions when perjured testimony to the Court might be the result of misadvice or misrepresentations by counsel, this is not such a case. The Court rejects as not credible the Defendant's testimony that Mr. Baker told him to answer all questions from the Court during the colloquy with a "yes" because he shouldn't make the Court, the State, and the victims' families angry.

(i) The Defendant's 3.850 raises no issue regarding Mr. Baker's advice concerning or argument for juvenile sanctions. Had the issue been raised, it would be refuted by Mr.

Baker's credible testimony that he briefly discussed juvenile sanctions with the Defendant, and by the record of the plea colloquy, during which the Court, the Assistant State Attorney and Mr. Baker, in the presence of the Defendant, each addressed the appropriateness *vel non* of juvenile sanctions. *See* transcript of November 16, 2001, plea colloquy at page 5, lines 5-9; page 8, lines 2-5; and page 16, lines 12-25 and page 17, lines 1-11.

(j) Judge Wallace determined, at the conclusion of his comprehensive plea colloquy, that the Defendant's guilty pleas were given freely, knowingly, and voluntarily. *See* transcript of November 16, 2001, plea colloquy at page 25, lines 14-25, and page 26, line 1.

Ex. D-4 at 295-303 (footnotes omitted).

The trial court held:

Based on the above factual findings, the Court concludes that the Defendant's pleas of guilty to one count each of sexual battery, lewd and lascivious molestation, and lewd and lascivious conduct were given freely, knowingly, and voluntarily. It further concludes that the Defendant has failed to carry his burden of proving that Mr. Baker's representation fell below an objective standard of reasonableness. Further, even had the Defendant demonstrated that the representation fell below that standard, he has failed to prove that there is a reasonable probability that, but for counsel's allegedly unprofessional errors, the result of the proceeding would have been different, *i.e.*, the Defendant would not have entered his guilty pleas. The Court concludes that the pending motion was filed not because Mr. Baker acted unprofessionally, but rather because the Defendant is displeased with the lawful sentences imposed upon him in this case. Such dissatisfaction provides no basis upon which to grant post-conviction relief.

- 21 -

<u>Id</u>. at 303-04.

As noted previously, upon Petitioner's appeal of the denial of the Rule 3.850 motion, the appellate court per curiam affirmed the trial court's order.  Accordingly, the claim was rejected on the merits by the state trial and appellate courts.  Thus, there are qualifying state court decisions.  This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  The Court must next consider the "contrary to" and "unreasonable application" components of the statute.

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## VII.  Conclusion

Any other claims not specifically addressed are found to be without merit.  Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now,

**ORDERED AND ADJUDGED:**

1.    The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition for Writ of Habeas Corpus and dismissing this case with prejudice.

3.    The Clerk of the court shall close this case.

**DONE AND ORDERED** in Jacksonville, Florida, this _____3rd_____ day of January, 2008.

HOWELL W. MELTON
United States District Judge

sa 11/30
c:
James T. Miller, Esquire
Ass't A.G. (Pate)